## DICKSON v. ALEXANDRIA HOSPITAL, Inc. et al.

### No. 5916.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 5, 1949.

Decided Nov. 7, 1949.

Marshall H. Lynn, Washington, D. C., Thomas R. Dyson, Alexandria, Va., and Robert C. J. McKinstry, Philadelphia, Pa., for appellant.

Armistead L. Boothe and J. Randall Caton, Jr., Alexandria, Va. (Irving Diener, Alexandria, Va., on the brief), for appellees.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and BARKSDALE, District Judge.

BARKSDALE, District Judge.

This is an action instituted by plaintiff, Paulette Louise B. Dickson, against Alexandria Hospital, Inc., a beneficiary under the will of Virginia Simpson, deceased, and the First National Bank of Alexandria, her executor, alleging that, as sole beneficiary under the will of plaintiff's deceased husband, French Cameron Simpson, she was entitled to a share of the estate of George L. Simpson, deceased, which said Virginia Simpson had disposed of by her will. Upon the motion of defendants, the district court dismissed the complaint as failing to state a claim against the defendants upon which relief could be granted, and from the dismissal of her complaint, the plaintiff has appealed.

On this appeal, two minor questions are presented, one of them being the question of the jurisdiction of the district court. While it is true that federal courts have no jurisdiction to probate wills or administer estates, this is an action by a nonresident against residents of this State, to establish a claim to property not in the custody of the State court, and the jurisdictional amount being present, there is no doubt that the district court had jurisdiction, notwithstanding the fact that the real question here presented is the construction of a will. Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed 256; Princess Lida of Thurn and Taxis v. Thomp-

son, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285; Hinkley v. Art Students' League, 4 Cir., 37 F.2d 225.

The other minor question presented is the determination of the effect of certain probate proceedings purportedly under the authority of Section 5439, Code of Virginia. We do not find that a consideration of this question is at all necessary to our decision, and therefore express no opinion on it.

The real question in the case is the construction of the holographic will of George L. Simpson, formerly a resident of Alexandria, Virginia, who died on April 20, 1907, survived by his widow, Virginia Simpson, and two sons, George Robbins Simpson and French Cameron Simpson, which will is as follows:

"I, Geo. L. Simpson, being of sound mind do hereby make this my last will and testament; first I do not wish any appraisment of my estate; Secondly I do not wish my wife Virginia Simpson, whom I appoint my executrix, to give any security; Thirdly, I give to my wife Virginia Simpson, my property on Cameron and Columbus Streets, including furniture and contents of my home. Fourthly I give to each of my boys Geo. Robbins Simpson and French Cameron Simpson, the sum of ten thousand dollars, this money to be paid over to them when Geo. Robbins Simpson shall have reached the age of twenty-five years and when French Cameron Simpson shall have reached the age of twenty-five years. *The remainder of my property to go to my wife Virginia Simpson as long as she remains my widow. In the event of her marrying then said remainder of my property is to be equally divided between my sons Geo. Robbins and French Cameron Simpson.*
"Feb. 13, 1903.
"Geo. L. Simpson." (Italics supplied.)

Promptly after the death of George L. Simpson, his will was admitted to probate, and his widow, Virginia Simpson, qualified as his executrix, giving bond in the penalty of $35,000 without security. George Robbins Simpson died intestate and unmarried on August 24, 1934. French Cameron Simpson died January 27, 1940, leaving a will whereby he devised and bequeathed his entire estate to his widow, plaintiff in the district court and appellant here. Virginia Simpson, widow of George L. Simpson, died March 19, 1944, without having remarried, and left a will whereby she appointed appellee, First National Bank, as her executor, and the Bank duly qualified as such. Virginia Simpson left a substantial estate, and by her will, after making numerous specific bequests and establishing a trust fund, left her entire residuary estate to Alexandria Hospital, Inc., after the termination of the trust. Prior to the institution of this action, her executor had paid over to Alexandria Hospital, Inc., all the residue of the estate of Virginia Simpson, deceased.

Plaintiff's contention is, that by his disposition of the residuum of his estate, as follows: "The remainder of my property to go to my wife Virginia Simpson so long as she remains my widow. In the event of her marrying, then said remainder of my property is to be equally divided between my sons Geo. Robbins and French Cameron Simpson."—testator created a defeasible life estate in Virginia Simpson, one-half of which, at the death of Virginia Simpson, passed to her, the plaintiff, as sole beneficiary under the will of her deceased husband, French Cameron Simpson. Plaintiff alleges that the First National Bank, as executor, and Alexandria Hospital, Inc., as beneficiary, have refused to pay her the share to which she claims she is entitled, and therefore she instituted this action.

On the other hand, defendants contend that the above quoted language of George L. Simpson's will created a defeasible fee simple in Virginia Simpson, and said Virginia Simpson having died without remarrying, a fee simple title to the residuum passed to them by her will. Thus, the question of whether the above quoted sentences created a defeasible life estate in Virginia Simpson, or whether thereby she took a defeasible fee simple, was squarely presented to the district court. The district court held that Virginia Simpson took a defeasible fee simple estate, which be-

came absolute when she died without having remarried, and dismissed the complaint. We hold that the conclusion reached by the district court was right.

There is no question about the fact that Virginia law controls the decision of this case. No Virginia statute is directly applicable, so we must look to the common law as declared by the Virginia courts in the light of Virginia statutes which have a bearing on the question.

Appellant relies heavily on Blackstone's Commentaries, Minor's Institutes, and Minor on Real Property (Bl.Com. 121, 2 Minor's Insts., 3rd Ed., 99, 100, and 1 Minor on Real Property, 2d Ed., par. 199.3). The statement of the law relied on by appellants is thus phrased by Mr. Raleigh Minor (1 Minor on Real Property, 2d Ed., par. 199.3):

"*Estates Not Expressly for Life, but which May Last for Life.*

"Such estates do not include estates *expressly for life, but liable to be prematurely defeated* by the happening of a *condition subsequent.* Here, as in the case of a *fee qualified* and elsewhere, care must be taken to distinguish between an estate *upon condition subsequent* and an estate upon *special limitation.*

"It is the latter class of estates we are now to consider. Thus, a conveyance 'during coverture', or 'until marriage', or 'durante viduitate', or 'as long as Z resides abroad', creates an estate of this character. But a conveyance 'to A for life, but if he marries X, his estate to cease and determine' is an *express life estate* upon *condition subsequent,* and does not belong to the class of life estates we are now considering."

It is to be noted, however, that the paragraph above quoted is primarily a statement of a type of life estate occurring in a chapter entitled, "Life Estates in General", which contains no discussion of the specific question here presented.

By the common law, words of inheritance were absolutely necessary for the creation of a fee simple estate by *deed* (1 Minor on Real Property, 2d Ed., par. 147), and even in a *devise* of land, words such as "issue", "descendants", "offspring", or the like, showing the intent that the land shall descend in indefinite succession, were necessary if the technical word "heirs" was not used. Under these rules of the common law, it would seem clear that, under the language in the will here under consideration, Virginia Simpson could not possibly have taken a fee simple title. But, for many years, by statute, words of inheritance have not been necessary to create a fee simple title by either deed or will in Virginia. The statute is as follows: "Where any real estate is conveyed, devised, or granted to any person without any words of limitation, such devise, conveyance, or grant shall be construed to pass the fee simple or other the whole estate or interest which the testator or grantor had power to dispose of in such real estate, unless a contrary intention shall appear by the will, conveyance, or grant." Sec. 5149, Code of Virginia 1942.

In discussing the distinction between conditions subsequent and conditions in law, or common law (or special) limitations, Mr. Minor says (1 Minor on Real Property, 2d Ed., par. 525): "Common law or special limitations are created by such words as 'while', 'during', 'as long as', 'until', etc. Thus, a grant to A *until* Z returns from abroad; to a woman *while* she remains a widow, or *during* widowhood (durante viduitate), or during coverture; to D and his heirs *as long as* Y has heirs of the body (a fee qualified);—all these are special limitations, and not conditions subsequent."

In discussing the distinction between a "fee qualified" and a "fee upon condition", he says (1 Minor on Real Property, 2d Ed., par. 165):

"A special limitation is created by the use of such words as 'until', or 'as long as', or 'while', or 'during', etc. To this latter class belong *fees qualified.*

"Thus, a conveyance of land 'to A and his heirs *as long as* they remain citizens of Virginia' is a fee qualified in A, which may last forever, but terminates at any time not only by the exhaustion of A's heirs, but by their ceasing to be citizens of Virginia. On the other hand, a conveyance

'to A and his heirs (in fee simple), *but if* they should cease to be citizens of Virginia, the estate to *terminate'*, creates a fee simple in A *upon condition subsequent."*

It would seem that a conveyance "to A and his heirs as long as A remains unmarried", would stand exactly in the same category as a conveyance of land "to A and his heirs, as long as they remain citizens of Virginia", both being conveyances upon special limitation. Mr. Minor says that the form of conveyance last quoted creates a fee qualified. Inasmuch as by the statute above quoted, Section 5149, Code of Virginia 1942, words of inheritance are no longer necessary in Virginia, it would seem that Mr. Minor might consider a conveyance "to A as long as A remains unmarried" to create a fee qualified in A.

■ The textwriters quoted by appellant in her brief as tending to support her contention that under the will here in controversy Virginia Simpson took only a determinable life estate, generally indicate the importance of looking to the whole will, to determine the intention of the testator, in construing such a provision as is here under consideration. From the earliest times, Virginia courts have considered the intention of the testator of paramount importance in the construction of wills. In the very early case of Kennon v. McRoberts, 1 Wash 96, 97, 102, 1 Am.Dec. 428, the court said: "That the intention of the testator is to give the rule of construction, is declared by all the judges both ancient and modern. Ld. Holt and some others more modern, emphatically call that intention, the Polar Star, which is to guide our decision—and in a late case of Hodgson v. Ambrose, Dougl. 323, the court say, that this is the governing rule, to which all other rules of construction must yield"

And later, in Conrad v. Conrad's Ex'r, 123 Va. 711, 716, 97 S.E. 336, 338, the court said: "The rule is elementary that the intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy."

The District Judge was of the opinion that within the four corners of the will, the intention of the testator that his widow should have a fee simple, defeasible only by her remarriage, was apparent. A careful consideration of the will gives strong support to this view. At the beginning of the will here in controversy, which testator himself wrote, he did four things: (1) he provided that there be no appraisement, (2) he appointed his wife his executrix, (3) he provided that she give no security, and (4) he devised to his wife, in fee simple, his residence, including its furniture and contents. He would hardly have provided that there be no appraisement if he had wished his wife to be accountable to his sons for the residuum of his estate. The fact that he appointed her his executrix, without security, and gave her outright his home with all its contents, strongly indicates not only his love for her, but his trust in her loyalty and good judgment. The testator then made specific devises of $10,000.00 to each of his sons, payable to them when they reached the age of twenty-five. This would seem to indicate that it was the testator's intention to give each son $10,000.00 with which to start his business career, and rely upon his wife to make such provision for them from the residuary estate as in her judgment might be wise and proper. In the event of a diversion of her affections by remarriage, the testator specifically provided that the residuum of his estate should go to his sons.

■ A consideration of the Virginia cases leads us to the conclusion that the disputed language in the will under Virginia law created a defeasible fee simple estate in testator's widow. In the case of Vaughan v. Vaughan's Ex'x, 97 Va. 322, 33 S.E. 603, 604, the court was called upon to construe the following provision of a will: "I do hereby bequeath to my wife, Emma Lee Vaughan, and to my children, all my property, of every kind, real and personal, and do hereby appoint my wife my sole executrix, without security, as long as she shall remain my lawful widow. Should she marry again, the minor children to choose guardians, and my wife in that

event to take a child's part, to be hers as long as she lives, and at her death to be distributed amongst my children then living. I further request that no appraisement or other expense be made."

The court held that the widow took the entire estate in fee simple, defeasible only in the event she married again, in which event she would take a child's part for her life. The court said, 97 Va. at page 325, 33 S.E. at page 604: "The only harmonious construction to·be drawn from all the provisions and words of the will, considered together, is that the testator intended to give to her the entire estate, but, if she married again, then she was only to have a child's part for her· life."

The leading case, and the one which we believe to be decisive of the question here presented, is Trice v. Powell, 168 Va. 397, 191 S.E. 758, 759. The provision of the will there under consideration was as follows: "That I give and bequeath to my sister, Nannie Goodwin, all money & bonds and the entire landed estate to do as she thinks proper, so long as she remains single, but if she marries it is to be sold and divided between the heirs of body of Julia D. Kuper, Mattie W. Powell & Robert Goodwin, and she to retain one-fourth of said sale, and in the event of her death intestate, it is to be divided as above stated."

The court cited Vaughan v. Vaughan's Ex'x, supra, considered Minor on Real Property (Sections 168 and 540, 1st edition, which are Sections 165 and 525, 2nd edition), and quoted from 69 Corpus Juris, "Wills", as follows:

"A devise to a testator's widow, which is absolute except for a provision terminating the estate, or providing for a gift over, in the event of her remarriage, creates a defeasible fee subject to be defeated by her remarriage." (Section 1557).

"It is generally held that, where an estate has been devised in fee, subject to be defeated by the happening of some future event or contingency, if the happening of such event or contingency becomes impossible of occurrence, the defeasible fee becomes a fee simple absolute. A de-feasible fee will be enlarged into a fee simple absolute upon the death of the first devisee prior to the happening of the event or contingency by which alone his estate can be defeated, and which event or contingency cannot possibly occur after his death." (Section 1559).

In considering the clause of the will, "That I give and bequeath to my sister, Nannie Goodwin, all money & bonds and the entire landed estate to do as she thinks proper, * * *", the court said: "We then arrive at the conclusion that whether we end the clause after the word 'estate,' or after the word 'proper,' a fee-simple estate is conveyed subject only to such limitation as is placed thereon by the language 'so long as she remains single,' annexed thereto. These latter words mark out the utmost period during which the estate conveyed to her may endure. The clause 'but if she marries,' is but another expression confining the disposition of the estate to a period 'so long as she remains single.' Both clauses, 'but if she marries,' and 'in the event she dies intestate', are words of defeasance with a meaning so clear and distinct that little doubt can be entertained that they established a special limitation upon the. fee simple."

The court held that Nannie Goodwin took "a qualified or defeasible fee in the estate devised, which became an absolute fee upon her death, unmarried and testate."

Other cases in which defeasible fees have been created by wills in Virginia, are Kemp v. McGuire, 112 Va. 715, 72 S.E. 686, and People's National Bank v. Crickenberger, 159 Va. 264, 165 S.E. 412.

In Whitehead v. Whitehead, 174 Va. 379, 6 S.E.2d 624, 625, the will provided: "The Balance of my Estate I give to My Wife Nannie G. Whitehead Both real and Personal also Cash, Bond Stocks and· Insurance in fee Simple."

This provision was followed by a request that the wife pay his sister an annuity, and a gift over "Upon the Death or Re-Marriage of My Wife * * *." The court held that, notwithstanding the subsequent provisions, the widow took a fee simple absolute by virtue of the first

quoted provision of the will. Holt, J., agreed that the provision for the annuity must fail, but dissented upon the ground that in his opinion the rule of Trice v. Powell, supra, required the holding that the widow took a fee, defeasible in the event of her remarriage.

From other jurisdictions, appellant strongly relies upon Tillerson v. Taylor, 282 Mo. 204, 205, 220 S.W. 950; and Hale v. Neilson, 112 Miss. 291, 72 So. 1011. Both of these cases reach the conclusion urged by appellant. However, both opinions strongly indicate that the intentions of the testators as indicated by the entire wills, strongly influenced the courts in reaching these conclusions. Appellees cite as particularly in point, In re Platman's Estate, Sur., 72 N.Y.S.2d 28, and Pumroy v. Jenkins, 151 Kan. 466, 99 P.2d 752. Both of these cases support the contention of appellees. However, cases from other jurisdictions require no extended discussions here, as, in our view, this question of Virginia law is adequately covered by the Virginia decisions.

It is therefore our conclusion that the last two sentences of the will created a defeasible fee simple title to the residuum in the widow, Virginia Simpson, which became a fee simple absolute when she died without having remarried. It therefore follows that the decision of the district court will be

Affirmed.